**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT**
**OF OKLAHOMA**

| | |
|---|---|
| 1) UNITED STATES OF AMERICA, ex rel. | ] |
| 2) Ray Dillahunty, | ] |
| | ] |
| Plaintiff/Relator, | ] |
| vs. | ]   Case No: |
| | ] |
| 1) CHROMALLOY OKLAHOMA, a division of | ] |
| CHROMALLOY GAS TURBINE CORPORATION; | ]   *FILED UNDER SEAL* |
| 2) CHROMALLOY GAS TURBINE CORPORATION; | ] |
| 3) CHROMALLOY GAS TURBINE LLC; | ] |
| 4) SEQUA CORPORATION; and | ] |
| 5) THE CARLYLE GROUP, | ] |

## QUI TAM COMPLAINT

**RELATOR RAY DILLAHUNTY**, brings this qui tam action in the name of the United States of America, by and through attorneys David W. Van Meter and M. Kevin Walker and alleges and states as follows:

### SUMMARY INTRODUCTION

1.      This is an action by qui tam Relator Ray Dillahunty on behalf of the United States of America (U.S.) against Defendants to recover penalties and damages arising from false claims for payment under federal government contracts where Defendants have approved, certified and presented certain airplane engine parts as serviced according to Specifications without actually and/or fully complying with the Specification. By the failure to comply with the Specifications, Defendants have placed non-serviceable and incompletely serviced parts into service, and the integrity of the parts is in question which affects the durability of the parts, shortens the life of the parts and results in potential part failures and thus a flight safety risk. Mr. Dillahunty worked

as a technician and supervisor for Chromalloy for approximately eleven (11) years.  As such Mr. Dillahunty was privy to intimate details concerning the failures to comply with the Specifications and had confronted his superiors on different occasions regarding various parts.   Defendants responded with no corrective action, acknowledged no waivers or change orders, approved the deviations and directed the continued misconduct.

## PARTIES

2.      Relator Ray Dillahunty is a citizen of the United States of America and resides in the State of Oklahoma.

3.      Defendant, Chromalloy Oklahoma, a division of Chromalloy Gas Turbine Corporation is a subsidiary of Sequa Corporation, which is owned by The Carlyle Group.

4.      Defendant Chromalloy Oklahoma operates in Midwest City, Oklahoma, and therefore within this district under the trade name Chromalloy Division-Oklahoma.

5.      Defendant Chromalloy Oklahoma may be served with process of this Court through its registered agent The Corporation Company, 735 First National Building, Oklahoma City, Oklahoma 73102.

6.      Defendant Chromalloy Gas Turbine Corporation and Chromalloy Gas Turbine LLC operate in San Antonio, Texas and have been registered to do business in Oklahoma since 6/25/1987 as a Foreign For Profit Business Corporation (ID 2300457720) and since 12/28/2007 as a Foreign Limited Liability Company (ID

2

3712164576).  It owns and controls Chromalloy Oklahoma and thus routinely conducts business via Chromalloy Oklahoma in Oklahoma.

7.     Defendant Chromalloy Gas Turbine Corporation may be served with process of this Court through its registered agent The Corporation Company, 735 First National Building, Oklahoma City, Oklahoma 73102.

8.     Defendant Sequa Corporation operates in New York, New York and has been registered to do business in Oklahoma since 1/22/1970 as a Foreign For Profit Business Corporation (ID 2300336924).  It owns and controls Chromalloy Gas Turbine Corporation and thus routinely conducts business via Chromalloy Oklahoma in Oklahoma.

9.     Defendant Sequa Corporation may be served with process of this Court through its registered agent The Corporation Company, 120 N. Robinson, Ste. 735, Oklahoma City, Oklahoma 73102.

10.     Defendant The Carlyle Group (aka The Carlyle Group, L.P. a Delaware Limited Partnership) operates in Washington, DC and is a global private equity firm.  It owns and controls Sequa Corporation and all its subsidiaries and thus routinely conducts business via Chromalloy Oklahoma in Oklahoma.

11.     Defendant The Carlyle Group may be served with process of this Court through its registered place of business in Washington, DC by its registered agent CT Corporation System, 1025 Vermont Avenue, N.W., Washington, DC 20005.

**JURISDICTION & VENUE**

12.     This action arises under the False Claims Act, 31 U.S.C. §§ 3729 et seq.

13.     This Court maintains subject matter jurisdiction over this action pursuant to 31 U.S.C. § 3732(a) (False Claims Act) and 28 U.S.C § 1331 (Federal Question).

14.     Venue is proper in this Court pursuant to 31 U.S.C. § 3732(a) because (i) Chromalloy Oklahoma resides in this district; (ii) Chromalloy Oklahoma transacts business in this district and did so at all times relevant to this complaint; (iii) Chromalloy Oklahoma committed the acts prescribed by 28 U.S.C. § 3729 – acts giving rise to this action – within this district.

15.     At the time of filing this Complaint, Mr. Dillahunty served a copy of same upon the United States, together with a written disclosure statement package setting forth and enclosing all material evidence and information he possesses pursuant to the requirements of 31 U.S.C § 3730 (b)(2).

16.     Mr. Dillahunty has complied with all other conditions precedent to bringing this action.

17.     Mr. Dillahunty is the original source of, and has direct and independent knowledge of, all disclosed information on which any allegations herein might be deemed based, and has voluntarily provided such information to the Government upon filing this action.   Specific disclosures include:

A.      Production Schedules – Combined Claims

B.      TT-33 Turbine Vane, Stage 1 (see ¶19)

1)      Record of Revisions/Changes

     2)      Process Sequence

     3)      Repair Supplemental Instructions (CDO Spec 2532)

     4)      Standard Routing Information (Labor Standards)

C.     <u>TT-33 Compressor Status N-1, Stages 5-8</u> (see ¶20)

     1)      Repair Supplemental Instructions (INSPECT/FINAL Check Sheet)

     2)      Work Order Report – Inventory Report (Work Order 359380)

     3)      Interface Activity Report – Current Status (Work Order 359380)

     4)      Work Order Report – Inventory Report (Work Order 359383)

     5)      Interface Activity Report – Current Status (Work Order 359383)

     6)      Work Order Report – Inventory Report (Work Order 381721)

     7)      Interface Activity Report – Current Status (Work Order 381721)

     8)      Work Order Report – Inventory Report (Work Order 381723)

     9)      Interface Activity Report – Current Status (Work Order 381723)

     10)    Work Order Report – Inventory Report (Work Order 404874)

     11)    Interface Activity Report – Current Status (Work Order 404874)

     12)    Work Order Report – Inventory Report (Work Order 404877)

     13)    Interface Activity Report – Current Status (Work Order 404877)

     14)    Router (Sequence Form – blank)

D.     <u>TF-33 Compressor Stators N-2, Stages 10-15</u> (see ¶ 21)

     1)      Repair Supplemental Instructions (INSPECT/FINAL Check Sheet)

     2)      Router (Sequence Form – blank)

     3)      Standard Routing Information (Labor Standards)

E.     <u>F100 Stage 1 Turbine Vane</u> (see ¶ 22)

    1)    Repair Supplemental Instructions

    2)    Military Green Sheet (Inventory sheet)

    3)    Standard Routing Information (Labor Standards)

    4)    In Process Work Order Listing And Histories (Work Order 407920, Et Seq.)

    5)    Interface Activity Report And Current Status (Work Order 405697)

    6)    Interface Activity Report And Current Status (Work Order 408270)

    7)    Work Order 40735 – Inventory Report Sheet – History

F.     <u>F100 Stage 3 Turbine Vane</u> (see ¶23)

    1)    Repair Supplemental Instructions (Remove Rivet)

    2)    Work Order 405222

    3)    Router (Sequence Form)

    4)    Interface Activity 405222

    5)    Work Order Report – Inventory Report (Work Order 405254)

    6)    Router (Sequence Form – Work Order 392044)

    7)    Work Order Report – Inventory Report (Work Order 373882)

    8)    Router (Sequence Form - Work Order 338999, After 1995)

    9)    Router (Sequence Form – Work Order 353063, After 1995)

    10)    Router (Sequence Form – Work Order 386904, New Contract)

    11)    Work Order Report – Inventory Report (Work Order 405218 – same performed through 405254)

    12)    Interface Activity 373882 (heat tint failure)

    13)    Employee Report 409317, 409318, 409319

    14)    Standard Routing Information (Labor Standards)

G.    <u>F100 Stage 4 Turbine Vane – Full Face Weld</u> (see ¶ 24)

    1)    Work Package – Part 4066654

    2)    Router (Sequence Form – Work Order 388033, Old Contract)

    3)    Record of Revisions/Changes (old contract – shows never incorporated full face weld)

    4)    Repair Supplemental Instruction – Inspect/Final (old – Op. 520)

    5)    Repair Supplemental Instruction – Inspect/Final (old – Op. 255)

    6)    Digital Recording – improper repair

H.    <u>F100 Stage 4 Turbine Vane – Input Stress</u> (See ¶ 25)

    1)    Repair Supplemental Instruction – Inspect/Final

    2)    Standard Routing Information (Labor Standards)

    3)    Military Green Sheet (Inventory sheet)

    4)    Interface Activity Report And Current Status (Work Order 407394, 407398, 407399, 407799, 408072, 408070, 408068, 408067, 408503)

    5)    Router (Sequence Form – Work Order 405146, 405149, 405163, 405182, 405478, 408507)

    6)    Inventory Report by Work Order – 405138-405143, 405146-405148)

I.      <u>TF39 LPT Blade</u> (see ¶ 26)

     1)      Repair Supplemental Instructions – INSPECT/FINAL

     2)      Digital Recording – improper repair

J.      Photographs Of Parts

K.      Tape Recorded Conversations

     1)      Gary Swanson, Tool Design Engineer – TF39 LPT Blade; admission cutting parts wrong for 20+ years.  (see ¶ 25)

     2)      Delana Magness, Specification Writer 15+ years – F100 Stage 4 Turbine Vane; regarding old contract, improper full face welding and Specification was never changed because never approved to allow this (see ¶ 24)

18.      Defendants contracted with the U.S. Government to repair various serviceable airplane engine parts according to Specifications in exchange for payment for those repairs.

## FACTUAL ALLEGATIONS

19.      TF33 Turbine Vane, Stage 1 is a hollow core vane for a TF33 aircraft engine and is a Pratt & Whitney engine used in various airplanes like the B-52 and KC-135.  United States Government Contract number F34601-03-D-0041 Statement of Work with Technical Order 2J-TF33-53-6; -53-7 and Work Package 065 00 requires the coating be stripped off the part, defects repaired, and coating re-applied to bring the part back up to serviceable condition on Part Number 804351.

A.      Chromalloy Division Oklahoma process specifications number 2532 aka

Part Code: T2532V11(CDO No. 2532) Operations number 950 (Op. No. 950) in compliance with the Government Contract allows light blending after stripping to remove isolated indications of remaining coating but only local blending on 10% maximum of airfoil and buttress surfaces for coating removal.   Defendants VIOLATE this Specification by excessively blending up to 95% of the airfoil surface to remove remaining coating causing thinning of the airfoil which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the remaining density of the airfoil is unknown.   Defendants further VIOLATE this Specification by placing non-serviceable parts into service.

B.     CDO No. 2532 Op. No. 950 also requires the allowable blending be accomplished using only the W163 X 7670 (marshmallow) blending stone. These blending stones are connected to air tools and used to hand finish the blending off of the remaining coating.  Defendants VIOLATE this Specification by not using the required blending stone but rather using sanding discs and blending stones which are more abrasive causing thinning of the airfoil which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the remaining density of the airfoil is unknown.  Defendants further VIOLATE this Specification by placing non-serviceable parts into service.

C.     CDO No. 2532 Op. No. 950 also requires that Heat Tint inspection must be performed within four (4) hours after Heat Tint operation on this part.  This

inspection aids in determining the coating integrity of the part.   Defendants VIOLATE this Specification by routinely not inspecting within four (4) hours after heat Tint, sometimes not performing the inspection until days later, causing failure to accurately visualize the remaining coating which could lead to excessive blending affecting the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the remaining density of the airfoil is unknown.   Defendants further VIOLATE this Specification by placing non-serviceable parts into service.

D.      CDO No. 2532 Op. No. 2600 requires Class Inspection of this part with BG-60288 gage classification system computer and master gage classification tool PN BG-60289.     This inspection measures the airflow of the part. Defendants VIOLATE this Specification by failing to use the BG-60288 system and the PN BG-60289 tool, and instead use an entirely different gage not listed or otherwise approved for this Specification.   Defendants further VIOLATE the Specification by cold forming the part, not allowed under the Specification, by physically bending the part to conform to the real gage measurements while the part is cold causing questionable structural integrity resulting in a potential part failure and thus a flight safety risk.

E.      The Specification Basic Issue Date was 17 April 2003 (or approximately five (5) years ago) and approximately twenty five thousand (25,000) parts have been serviced by Defendants thus far.   Defendants have Approved, Certified, and presented the subject parts as serviced according to Specifications without

actually and/or fully complying with the Specifications, and have billed and been paid by the Government about $205.00 per part for an estimated total of $5,125,000.00, thus constituting fraud against the Government.

20.    A Stator is a ring made up of vanes and/or blades.    The TF33 Compressor Stator N-1, STG 5-8 stators are worked in half circles and then assembled as one when they are installed in the airplane engine.    United States Government Contract number FA8104-05-D-0014 Statement of Work with Technical Order 2J-TF33-53-6 & -53-7 and Work Package 009 00 & 009 01 for Part Number C2461S19 requires replacement of damaged vanes and restoration of the size and shape of the stator to proper configuration by running the stator through various heat cycles.    There are a total of four (4) stages:  5th through 8th stages.  Defendants have various Work Order Numbers, including, but not limited to, 359380, 359383, 381721, 381723, 404874, and 404877, all requiring the same work.    The old Government Contract Number was F35601-95-D-0962.

A.    Under Work Order 359380 for example, CDO 2461 aka Part Code: C2461S19 Op. No. 184 requires dimensional repair.  If the dimensions are too large, meaning the two halves do no match, the stator is "cold formed" by hammering into a smaller dimension.  If the stator is too small it is taken through a heat treat cycle to expand it.  Op. No. 185 then requires Magnetic Particle Testing after a stator has been resized to assure the absence of cracks. Defendants VIOLATE the Specification by failing to perform Magnetic Particle Testing after resizing, and in fact routinely Approve and Certify the parts were

repaired in accordance with the proper Specification, causing failure to properly insure the integrity of the part and identify the presence of cracks which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the integrity of the stator is unknown.   Defendants further VIOLATE this Specification by placing non-serviceable parts into service.

B.     The Specification Basic Issue Date was 30 October 1995 (or approximately thirteen years ago) and approximately thirteen thousand seven hundred (13,700) parts have been serviced by Defendants thus far.  Defendants have Approved, Certified, and presented the subject parts as serviced according to Specifications without actually and/or fully complying with the Specifications, and have billed and been paid by the Government about $600.00 per part for an estimated total of $8,220,000.00 to date, thus constituting fraud against the Government.

21.    TF33 Stator N-2 is the same basic parts as Stator N-1 except they are one complete circular configuration unit that does not separate for working.   United States Government Contract number FA8104-05-D-0014 Statement of Work with Technical Order 2J-TF33-53-6 & -53-7 and Work Package 010 00 & 010 01 for Part Number C2542S11 requires replacement of damaged air seals in all stators.

A.     Under Work Order 388228, Part Serial No. 749395 for example, CDO 2542 aka Part Code: C2542S11 Op. No. 2400 requires air seals to be round to be within acceptable dimensions and if not they are to be replaced and properly

machined.   Defendants VIOLATE this Specification by hand blending the unfinished air seal machined surface (also against industry standards) causing the potential of an uneven surface which would result in an insufficient seal providing a potential part failure and thus a flight safety risk, and causing a thinning of the air seal which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the remaining density of the air seal is unknown.   Defendants further VIOLATE this Specification by placing non-serviceable parts into service.

B.      Op. No. 2850 (referencing CDO No. 4260) requires baking the stators at a specific temperature and a specific amount of time once coating is applied prior to final inspection.  Defendants VIOLATE the Specification by failing to bake the stators for the correct amount of time  after coating is applied, taking the position that it takes too long and makes no difference in the final product, causing the integrity of the coating to be in question presenting the potential for a part failure and thus a flight safety risk.  Defendants further VIOLATE this Specification by placing an incompletely serviced part into service.

C.      The Specification Basic Issue Date was approximately thirteen years ago and approximately nine thousand four hundred (9,400) parts have been serviced by Defendants thus far.  Defendants have Approved, Certified, and presented the subject parts as serviced according to Specifications without actually and/or fully complying with the Specifications, and have billed and been paid by the Government about $600.00 per part for an estimated total of $5,640,000.00 to

date, thus constituting fraud against the Government.

22.     F100 Stage 1 Turbine Vane is part of a Pratt & Whitney F-100 engine used mostly in military fighter aircraft like the F-15 and F-16 Fighter planes.   United States Government Contract number FA8104-06-D-0004 (current contract) and FA1608-00-D-0145 (previous contract) Statement of Work with Technical Order 2J-F100-13-7-1 and Work Package 385 00 & 485 00 requires removal of corrosion, repair of cracks, blending of repairs, inspection, and seal replacement on Part Number 4059681 and 4059691.

A.     CDO No. 2349 Op. No. 31 requires the use of B-44, 180 grit stone, or equivalent, for blending to remove corrosion and high material.   Defendant VIOLATES the Specification by failing to use the appropriate B-44 stone or its equivalent causing thinning of the vane which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the remaining density of the vane is unknown.   Defendants further VIOLATE this Specification by placing non-serviceable parts into service.

B.     CDO No. 2349 Op. No. 31 also requires blending the leading edge (L.E.) to remove cracks in the coating and erosion for reapplication of coating to bring the part into spec.   Defendants VIOLATE the Specification by inadequately blending out the coating cracks and then applying their sermitel coating to cover up the deficient work and avoid detection of the inadequate blend quality.   The labor standard for this operation is between 30 to 45 days; however, Defendants are completing this in as little as 3 to 4 days.   This causes the integrity of the

coating to be in question presenting the potential for a part failure and thus a flight safety risk.  Defendants further VIOLATE this Specification by placing an incompletely serviced part into service.

C.     CDO No. 2349 Op. No. 37 requires inspection of the vanes in the heat tinted condition reviewing the heat tint per PWA 31383 photo within 24 hours. Defendants VIOLATE the Specification by failing to perform the required review and thus failing to ensure no more than 30% of coating on the gas path is missing which causes the integrity of the coating and the integrity of the part to be in question presenting the potential for a part failure and thus a flight safety risk.  Defendants further VIOLATE this Specification by placing an incompletely serviced part and a non-serviceable part into service.

D.     CDO No. 2349 Op. No. 45 requires the removal of the old air seal with a mill without cutting into the vane seal surface.  The remaining Electronic Beam (E.B.) weld can then be blended to the vane seal surface.  The E.B. welder is used to replace the seal in exactly the right position.  If the correct procedures are not followed there is no way to know if the vane seal surface is dimensionally correct.  Defendants VIOLATE the Specification by manually using a belt sander to grind the seal off (because it is faster) causing the thinning of the vane surface which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the integrity of the part is unknown.  Defendants further VIOLATE the Specification by failing to properly accomplish the required dimensional tolerances causing the integrity of the part

15

to be in question which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the exact positioning of the new seal is unknown. Defendants also further VIOLATE this Specification by placing non-serviceable parts into service.

E.     The Specification Basic Issue Date was 23 June 1991 (or approximately seventeen years ago) and approximately sixty-eight thousand (68,000) parts have been serviced by Defendants thus far.   Defendants have Approved, Certified, and presented the subject parts as serviced according to Specifications without actually and/or fully complying with the Specifications, and have billed and been paid by the Government about $122.83 per part for an estimated total of $8,352,440.00 to date, thus constituting fraud against the Government.

23.    F-100 3rd Stage Turbine Vane is part of a Pratt & Whitney F-100 engine used mostly in military fighter aircraft like the F-15 and F-16 Fighter planes.   United States Government Contract number FA8104-06-D-0021 Statement of Work with Technical Order 2J-F100-13-9 and Work Package 305 00 and 405 00 requires removal of rivets, inspection, and rivet replacement.

A.     CDO No. 2544 aka Part Code: T2544V33 Op. No. 390 requires rivet removal when the rivet is loose or worn or when repair on this part requires heat treatment.  Most of these parts show wear in the form of a groove into the side of the rivet.  A drift is used to remove the rivet after belt sanding the upset side of the rivet.  Removal of vane parent material and damage to vane platform area is not allowed.   Defendants VIOLATE the Specification by belt sanding into the

16

vane parent material and vane platform area causing damage and thinning and/or cracking of the inner platform which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the remaining density of the platform is unknown. Defendants further VIOLATE this Specification by placing non-serviceable parts into service.

B.     CDO No. 2544 aka Part Code: T2544V33 Op. No. 480 requires Fluorescent Penetrant Inspection after rivet removal and prior to rivet replacement.  Defendants VIOLATE the Specification by failing to perform the Fluorescent Penetrant Inspection after rivet removal causing inability to appreciate, identify and address damage and thinning and/or cracking of the platform which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the integrity of the platform is unknown.   Defendants further VIOLATE this Specification by placing non-serviceable parts into service.

C.     CDO No. 2544 aka Part Code: T2544V33 Op. No. 745 requires rivet replacement after completion of above operations.  Defendants VIOLATE the Specification by performing rivet replacement during the same operation immediately following rivet removal, failing to perform multiple operation steps in between just to save time, which causes the integrity of the part to be in question presenting the potential for a part failure and thus a flight safety risk.  Defendants further VIOLATE this Specification by placing an incompletely serviced part into service.

D.     The Specification Basic Issue Date was approximately 1996 but for about ten (10) years the service was done improperly where approximately sixty thousand (60,000) parts have been serviced by Defendants thus far. Defendants have Approved, Certified, and presented the subject parts as serviced according to Specifications without actually and/or fully complying with the Specifications, and have billed and been paid by the Government about $140.00 per part for an estimated total of $8,400,000.00 to date, thus constituting fraud against the Government.

24.     F-100 4th Stage Turbine Vane is part of a Pratt & Whitney F-100 engine used mostly in military fighter aircraft like the F-15 and F-16 Fighter planes.   United States Government Contract number FA1608-00-D-0145 Statement of Work with Technical Order 2J-F100-13-9 and Work Package 316 00 and 413 00 requires inspection and repair of worn groove in forward lug on Part Number 4066654.

A.     CDO No. 2099 (aka Part Code: T2099V43) Op. No. 505 within Work Package 316 00 requires inspection of these vanes for platform lug groove wear. Statistically, there were only approximately 25% to 45% of the parts that were reparable.   Previously where the groove is in excess of Maximum Serviceable Limits and Maximum Reparable Limits the part was to be returned to the Government or held and stored, at no cost to the Government, for possible future repair.     Defendants VIOLATE the Specification by failing to return the non-reparable parts to the government and instead weld the entire surface of the forward lug on all of the parts regardless of the condition of the vane.   This

unauthorized repair practice increases Defendants' repair output to 98% and the operations are charged to the Government Contract as standard repairs.

B.      CDO No. 2099 and Work Package 316 00 requires repair only of those parts having groove wear within Maximum Serviceable Limits and Maximum Reparable Limits according to the Inspection Legend.  Defendants VIOLATE the Specification by welding the entire forward lug surface causing non-serviceable and non-reparable parts to be placed back into service having questionable integrity which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk.  Defendants further VIOLATE this Specification by causing cracks in the forward lug surface and potentially in the platform surface when blending and forming the forward lug after full-surface welding, causing non-serviceable damage to the parts which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the integrity of the forward lug and/or inner platform is unknown.  Defendants also further VIOLATE this Specification by interpreting the Inspection Legend paragraph 6 to their advantage to allow for the approval of the cracks being caused in the forward lug by the inappropriate full-surface welding and blending and therefore improperly place the damaged parts back into service causing inability to appreciate, identify and address damage and thinning and/or cracking of the forward lug and/or inner platform which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the integrity of

the forward lug and/or inner platform and entire airfoil is unknown.

C.     The improper service was performed somewhere between 1998 and 2005 and approximately twenty one thousand (21,000) non-reparable parts have been serviced by Defendants thus far.   Defendants have Approved, Certified, and presented the subject parts as serviced according to Specifications without actually and/or fully complying with the Specifications, and have billed and been paid by the Government about $100.00 per part for an estimated total of $2,100,000.00 to date, thus constituting fraud against the Government.

25.     F-100 4th Stage Turbine Vane is part of a Pratt & Whitney F-100 engine used mostly in military fighter aircraft like the F-15 and F-16 Fighter planes.   United States Government Contract number FA8104-06-D-0021 (new contract) Statement of Work with Technical Order 2J-F100-13-9 and Work Package 316 00 and 413 00 requires input stress at the pre-manufacture inspection to determine what repair is necessary.

A.     CDO No. 2535 (aka Part Code: T2535V41) requires Input Stress at the pre-manufacture   inspection   to   determine   necessary   repairs   and   proper evaluation.  Defendants currently VIOLATE the Specification by failing to perform Input Stress at the pre-manufacture phase (to save time) and are therefore unable to properly evaluate the part for necessary repairs causing the inability to appreciate, identify and address damage and causing the integrity of the part to be in question which affects the durability of the part, shortens the life of the part, and results in a potential part failure and thus a flight safety risk where the

integrity of the vane is unknown.  Defendants further VIOLATE this Specification by placing non-serviceable and incompletely serviced parts into service.

B.      The improper service is currently being performed since at least April 2008 and approximately two thousand (2,000) parts have been serviced by Defendants thus far.  Defendants have Approved, Certified, and presented the subject parts as serviced according to Specifications without actually and/or fully complying with the Specifications, and have billed and been paid by the Government about $100.00 per part for an estimated total of $200,000.00 to date, thus constituting fraud against the Government.

26.      TF-39 LPT Blades are part of the GE· engine and are used in the C5-A Transport airplane.   All TF-39 parts are used in Government engines.   United States Government Contract number (unknown) Statement of Work with Technical Order 2J-TF39-3 and Work Package 115 00  requires machining of notches and shrouds into part of the blade using a specific calibrated dressing block on multiple Stages (2 – 6) and then verified by inspecting with a coinciding calibrated check gage.

A.      CDO No. 2410 requires using a specific Dressing Block for machining notches and shrouds into the TF-39 Blades.  The blades are assembled in a circle attaching notch/shroud to notch/shroud and into the engine.  Defendants VIOLATE the Specification by failing to utilize the correct Dressing Block, and have instead used a dressing block that is 8 to 12 minutes off in calibration causing the blades to be slightly loose resulting in an incorrectly built Blade Assembly with questionable integrity which affects the durability of the part,

shortens the life of the part, and results in a potential part failure and thus a flight safety risk.  Defendants further VIOLATE the Specification by placing incorrectly serviced parts into service.

B.      CDO No. 2410 Op. No. 350 requires use of specific calibrated gages for verifying the calibration of the machined notches and shrouds as called out. Defendants VIOLATE the Specification by manually modifying the fixtures to make the Check Gauge read correctly providing a false inspection and verification of the part.

C.      The Specification Basic Issue Date was 05 May 1993 (or approximately fifteen (15) years ago (until just recently in the Spring of 2008 when new Dressing Blocks for the cutting wheels were received and the wrong usage was uncovered) and approximately one hundred ninety thousand (190,000) parts have been serviced by Defendants thus far.   Defendants have Approved, Certified, and presented the subject parts as serviced according to Specifications without actually and/or fully complying with the Specifications, and have billed and been paid by the Government about $50.00 per part for an estimated total of $9,500,000.00 to date, thus constituting fraud against the Government.

## VIOLATIONS OF THE FALSE CLAIMS ACT

27.      Each of the foregoing allegations is realleged and incorporated hereby.

28.      As described in this Qui Tam Complaint, Defendants, by and through their officers, agents, and employees, subsidiaries and divisions:  (i) knowingly presented, or caused to be presented, to the United States Government, false or fraudulent claims for

payment or approval; and (ii) knowingly made, used, or caused to be made or used, false records or statements to get false or fraudulent claims paid or approved by the Government.

29.     Defendants authorized and ratified all the violations of the False Claims Act committed by its various officers, agents, and employees, subsidiaries and divisions.

30.     The United States Government and the public fisc have been damaged and human lives have been placed in potential flight-risk harm as a result of the Defendants' violations of the False Claims Act.

31.     Mr. Dillahunty requests a trial on all issues so triable.

32.     **WHEREFORE,** Relator Ray Dillahunty, on behalf of himself and the United States Government, prays:

(i)      that this Court enter a judgment against Defendants in an amount equal to three times the amount of damages the United States has sustained as a result of Defendants' violations of the False Claims Act;

(ii)     that this Court enters a judgment against Defendants for a civil penalty of $10,000.00 for each of Defendant's violations of the False Claims Act;

(iii)    that Relator Ray Dillahunty recovers all costs of this action, with interest, including the cost to the United States Government for its expenses related to this action;

(iv)     that Relator Ray Dillahunty is awarded all reasonable attorneys' fees in bringing this action;

(v)    that in the event the United States Government proceeds with this action, Relator Ray Dillahunty be awarded an amount for bringing this action of at least 15% but not more than 25% of the proceeds of the action or settlement of the claims, to be paid out of such proceeds;

(vi)    that in the event the United States Government does not proceed with this action, Relator Ray Dillahunty be awarded an amount for bringing this action of at least 25% but not more than 30% of the proceeds of this action or settlement of the claims, to be paid out of such proceeds;

(vii)    that Relator Ray Dillahunty is awarded prejudgment interest;

(viii)    that a trial be held on all issues so triable; and

(ix)    that Relator Ray Dillahunty and the United States Government receive all relief to which either or both may be entitled at law or in equity.

Respectfully Submitted:

 s/David W. Van Meter
David W. Van Meter, OBA #13893
M. Kevin Walker, OBA #19590
VAN METER LAW FIRM
501 N. Walker Ave., Suite 120
Oklahoma City, OK 73102
(405) 228-4949
(405) 228-4945 fax

*ATTORNEYS FOR PLAINTIFF/RELATOR*

*ATTORNEYS LIEN CLAIMED*

24