# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **UNITED STATES OF AMERICA, ex rel. RAY DILLAHUNTY,**<br><br>  **Plaintiff,**<br><br>**v.**<br><br>**CHROMALLOY OKLAHOMA, a division of CHROMALLOY GAS TURBINE CORPORATION; CHROMALLOY GAS TURBINE CORPORATION; CHROMALLOY GAS TURBINE LLC; SEQUA CORPORATION; and THE CARLYLE GROUP,**<br><br>  **Defendants.** | **Case No. 08-CV-944-L** |

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

John N. Hermes, OBA #4133
Timothy J. Bomhoff, OBA #13172
M. Richard Mullins, OBA #13329
Ronald T. Shinn Jr., OBA #19569
McAFEE & TAFT
A Professional Corporation
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone:  (405) 552-2258
Facsimile:   (405) 228-7458
Email: john.hermes@mcafeetaft.com
Email: richard.mullins@mcafeetaft.com
Email: tim.bomhoff@mcafeetaft.com
Email: ron.shinn@mcafeetaft.com

and

Roger S. Goldman, DC #333294
Kyle R. Jefcoat, DC #492380
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, D.C. 20004-1304
Telephone:  (202) 637-2200
Facsimile:   (202) 637-2201
Email: roger.goldman@lw.com
Email: kyle.jefcoat@lw.com

*ATTORNEYS FOR DEFENDANTS*

September 30, 2010

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS .............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

MOTION .................................................................................................................. 1

BRIEF IN SUPPORT .............................................................................................. 1

I.    Introduction ................................................................................................. 1

II.   Statement of Undisputed Facts ................................................................. 3

III.  Arguments and Authorities ....................................................................... 8

      a.  Summary Judgment Standard ........................................................... 8

      b.  The Court Should Enter Summary Judgment Against Relator
          because the Release Unambiguously Settles This Matter ................... 8

      c.  Sections 3730(b) and 3731(c) of the FCA Protect the Government's
          Interest When a Relator is Dismissed From an Action Because of a
          Valid Release ................................................................................... 10

      d.  There is No Significant Federal Policy or Interest That Would Require
          Preempting the Operation of Oklahoma's State Law Regarding Releases ........ 13

IV    Conclusion…………….................................................................................. 21

CERTIFICATE OF SERVICE ............................................................................... 23

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                 **Page**

<u>Boyle v. United Technologies Corp.</u>,
    487 U.S. 500 (1988) ................................................................................ 14

<u>Cleveland v. Dyn-A-Mite Pest Control, Inc.</u>,
    57 P.3d 119 (Okla. Ct. App. 2002) ........................................................... 9

<u>Corbett v. Combined Communications Corp. of Oklahoma, Inc.</u>,
    654 P.2d 616 (Okla. 1982) ....................................................................... 9

<u>Kay Pharmacal Co. v. Dalious Const. Co.</u>,
    276 P.2d 756 (Okla. 1954) ....................................................................... 9

<u>Jarvis v. Potter</u>,
    500 F.3d 1113 (10th Cir. 2007) ........................................................... 1, 8

<u>L&M Enters., Inc. v. BEI Sensors & Sys. Co.</u>,
    231 F.3d 1284 (10th Cir. 2000) ............................................................... 8

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,
    475 U.S. 574 (1986) .................................................................................. 8

<u>Ridenour v. Kaiser-Hill Co., LLC</u>,
    397 F.3d 925 (10th Cir.  2005) ............................................................... 19

<u>Ritchie v. Lockheed</u>,
    558 F.3d 1161 (10th Cir. 2009) ......................................................... passim

<u>Searcy v. Philips Elecs. N. Am. Corp.</u>,
    117 F.3d 154 (5th Cir. 1997) .................................................................. 20

<u>Thournir v. Meyer</u>,
    909 F.2d 408 (10th Cir. 1990) .................................................................. 8

<u>Town of Newton v. Rumery</u>,
    480 U.S. 386 (1987) ................................................................................ 14

United States v. Health Possibilities, P.S.C.,
  207 F.3d 335 (6th Cir. 2000) ................................................................ 19

United States v. McCall,
  235 F.3d 1211 (10th Cir. 2000) ............................................................. 8

United States ex rel. Gebert v. Transp. Admin. Servs.,
  260 F.3d 909 (8th Cir. 2001) ........................................................... 8, 17

United States ex rel. Green v. Northrop Corp.,
  59 F.3d 953 (9th Cir. 1995) ........................................................... passim

United States ex rel. Hall v. Teledyne Wah Chang Albany,
  104 F.3d 230 (9th Cir. 1997) ............................................................... 17

United States ex rel. Killingsworth v. Northrop Corp.,
  25 F.3d 715 (9th Cir. 1994) .......................................................... 12, 19

United States ex rel. Le Blanc v. ITT Indus., Inc.,
  492 F. Supp. 2d 303 (S.D.N.Y. 2007) .................................................. 11

United States ex rel. Radcliffe v. Purdue Pharma L.P.,
  600 F.3d 319 (4th Cir. 2010) ................................................... 14, 18, 20

United States ex rel. Radcliffe v. Purdue Pharma L.P.,
  582 F. Supp. 2d 766 (W.D. Va. 2008) .................................................. 20

United States ex rel. Springfield Terminal Ry. Co. v. Quinn,
  14 F.3d 645 (D.C. Cir. 1994) ...........................................................15-16

United States ex rel. Stevens v. Vt. Agency of Natural Res.,
  162 F.3d 195 (2d Cir. 1998) ................................................................ 11

Vt. Agency of Natural Res. v. United States ex rel. Stevens,
  529 U.S. 765 (2000) ....................................................................... 10, 11

Wallis v. Pan American Petroleum Corp.,
  384 U.S. 63 (1966) .............................................................................. 14

Wang v. FMC Corp.,
  975 F.2d 1412 (9th Cir. 1992) ............................................................. 16

## STATUTES

31 U.S.C. § 3729 ....................................................................................... 2

31 U.S.C. § 3730 ............................................................................... passim

31 U.S.C. § 3731 ..................................................................................... 13

## RULES

Fed. R. Civ. P. 56 ................................................................................... 1, 8

## AMICUS BRIEF

Amicus Brief for United States, <u>United State ex rel. Radcliffe v. Purdue Pharma L.P.</u>,
   600 F.3d 319 (4th Cir. 2010) ..................................................... 11-12, 20

## LEGISLATIVE MATERIALS

S. Rep. 99-345,
   Reprinted in 1986 U.S.C.C.A.N. at 5267 ............................................. 16

## TREATISES

15A Am Jur 2d Compromise and Settlement § 18 ............................................ 10

13 <u>Corbin on Contracts</u>, § 67.9, Sarah Howard Jenkins (2003) ............................ 9

Restatement (Second) of Contracts § 284 (1981) ............................................ 9

## DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

## MOTION

Pursuant to Fed. R. Civ. P. 56(b), Defendants Chromalloy Gas Turbine Corporation, Chromalloy Gas Turbine, LLC, Chromalloy Oklahoma, a division of Chromalloy Gas Turbine Corporation, and Sequa Corporation (collectively, "Defendants") respectfully move the Court to enter summary judgment in their favor as to each Count in Plaintiff's Amended <u>Qui Tam</u> Complaint (the "Complaint") as it relates to Relator Ray Dillahunty only.  The Defendants are not seeking summary judgment on any Count in the Complaint as it relates to the United States.

## BRIEF IN SUPPORT

## I.
## INTRODUCTION

At issue is whether to give effect to a release voluntarily signed by Relator, thereby excluding Relator's continued involvement in this lawsuit.  Months after Relator notified the federal government of his allegations of fraud and after this case was filed under seal, Relator voluntarily signed a release extinguishing his claims against Defendants.  Since Relator has already released his claims, Defendants' Motion for Partial Summary Judgment as to Relator should be granted because "there is no genuine issue as to any material fact and … [Defendants are] entitled to judgment as a matter of law." <u>Jarvis v. Potter</u>, 500 F.3d 1113, 1120 (10th Cir. 2007) (<u>quoting</u> Fed. R. Civ. P. 56(c)).

1

There is no dispute that a release with language that encompasses the allegations set forth in the Complaint was executed after Relator filed his qui tam action. Moreover, this release was executed voluntarily, with adequate time to consider and revoke the agreement, by a represented party with an opportunity to consult counsel. Furthermore, Relator received something of value through the Release – a severance package – to which he would not have been entitled had he not signed the release.

That Release must be given effect as a matter of law.  Oklahoma state law requires that a Release be interpreted as a contract and its unambiguous language must be followed.  Here there is no question that the claims of Relator are encompassed by the language of the Release.  See Part III.B, infra.

Furthermore, the federal False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA"), contains no provision that would prohibit summary judgment against, and dismissal of, a relator based on a relator's execution of a release.  Indeed, the FCA contains multiple provisions which protect the government's interests in such a situation – or any situation – in which a relator is dismissed but the action itself remains.  Those protections include a prohibition on voluntary dismissals of the **entire** action without government consent, the ability to intervene late in the process for "good cause" shown, and, through the most recent amendments to the FCA, protection against the statute of limitations by allowing the government's complaint to "relate back" to Relator's complaint.  See Part III.C, infra.

The federal policy interests of the FCA, including the government's interest in combating fraud and the government's interest in collecting its share of any qui tam resolution, is nonetheless protected in this case even after Relator is dismissed.  The

government's interest in combating fraud is preserved because the government is aware of the allegations of fraud and can perform its own investigation and take over the prosecution of the case.  Similarly, the government's interest in collecting its share of any settlement is protected because the government retains the opportunity to pursue the case and its recovery is not limited by Relator's Release.  See Part III.D, infra.  Finally, the federal policy interests of the FCA are actually supported by the enforcement of the Release.

To summarize, there is a valid and voluntary Release under Oklahoma law and there is no strongly conflicting federal interest that requires that the Oklahoma standard for enforcing release be ignored.  Therefore, Defendants' Motion for Partial Summary Judgment as to Relator should be granted.

## II.
## STATEMENT OF UNDISPUTED FACTS

Pursuant to LCvR56.1, Defendants sets forth the following concise statement of material facts to which no genuine issue of fact exists.

1.      Relator filed this lawsuit on September 9, 2008.  See Docket Sheet, attached as Exhibit "1," see also Original Complaint (Doc. 1), filed 9/9/2008.

2.      On January 8, 2009, four months after filing this lawsuit, Relator executed a "Separation and Release Agreement Between Chromalloy Gas Turbine, LLC and Ray Dillahunty" (the "Release"), which states in pertinent part:

I understand that my employment with Chromalloy Gas Turbine, LLC ("the Company") will be terminated and that a separation benefit is being made available to me on the terms set forth below.

3

I understand that the Company will provide twelve weeks of separation pay at my current salary as a continuation on payroll (less applicable payroll deductions). In addition to this separation pay, the Company will continue to pay my medical, dental and vision insurance premiums under the benefit continuation provisions of the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA") until February 28, 2009. After this period has expired, health insurance premiums and continued coverage under COBRA shall be solely my responsibility.

In return for this severance payment and continuing paid medical insurance coverage, I agree that I have reached a full and complete settlement of any and all claims and disputes that have arisen or could arise out of my employment. I further agree to forever waive and release any and all claims of any kind, which I have, had or may have against the Company, its current, former and future owners, parents, subsidiaries, and affiliates, and their current and former partners, officers, directors, employees or agents, and any related parties up to the date of this Agreement (including, without limitation, claims relating to or arising out of my employment with any of the Company or the termination of that employment). This Release is intended as a full settlement and compromise of each, every and all claims of every kind and nature, whether known or unknown, actual or contingent, asserted or unasserted, arising under common law, statutory law or otherwise. No claim of any sort is reserved except claims that the law does not permit me to waive by signing this agreement. Specifically, but without limiting that general release, I also waive any rights or claims I might have pursuant to the Age Discrimination in Employment Act of 1967, as amended (ADEA). I am not waiving any rights or claims under ADEA that may arise after the date of this agreement.

4

I also agree to keep the terms of this agreement confidential (i.e., to not disclose the terms other than to my immediate family, tax or legal advisors) and that I will not remove or disclose confidential business information. I also understand that I have 45 days to consider this agreement before signing it; that I can revoke this agreement within 7 days after signing it by sending written notice of that revocation to Ruth Faulls at Chromalloy, 5161 West Polk Street, Phoenix, Arizona 85043, that the Company has advised me in writing, by this paragraph, to consult with an attorney before signing this agreement; and that the severance and continuing paid medical insurance coverage set forth in this agreement exceeds anything that I am already entitled to receive. By signing this agreement, I acknowledge that: I fully understand the terms of this agreement and that, by the attached Exhibit A, the Company has informed me in writing of the eligibility requirements applicable to the program, the group of employees covered by the program, and the job title and age of each eligible employee selected or not selected under the program; I voluntarily and knowingly agree to the terms stated in this agreement; and I was not under any duress, coercion or undue influence when I executed this agreement.

Agreed:

Signature: _____   Date: 1-8-09

Ray A. Dillahunty

Signature: _____   Date: Jan. 16, 2009

Ruth Faulls

<u>See</u> Declaration of Ruth Faulls and attached Release, attached as Exhibit "2."

    3. As part of the Release:

    •Relator accepted a severance constituting a payment of 12 weeks' salary and a continuation of his medical, dental and vision insurance premiums until the end of February 2009;

    •Relator provided Defendants "a full and complete settlement of any and all claims and disputes that have arisen or could arise out of my employment";

5

•Relator further agreed "to forever waive and release any and all claims of any kind, which I have, had or may have against the Company, its current, former and future owners, parents, subsidiaries, and affiliates," etc.;

•The Release "is intended as a full settlement and compromise of each, every and all claims of every kind and nature, whether known or unknown, actual or contingent, asserted or unasserted, arising under common law, statutory law or otherwise."

<u>See</u> Exhibit "2."

4.   When he executed the Release, Relator had both professional legal advice available and time to consider the decision to execute the Release.   At the time that Relator executed the Release in January 2009, he was represented by counsel – since counsel have represented him from at least the September 2008 filing of this <u>qui tam</u> action through the present.  <u>See</u> Original Complaint (Doc. 1); <u>see also</u> Exhibit "2."

5.   Relator acknowledged that Chromalloy had advised him to discuss the Release with an attorney:  "the Company has advised me in writing, by this paragraph, to consult with an attorney before signing this agreement."  <u>See</u> Exhibit "2."  By its terms the Release also provided Relator with a forty-five day window within which to consider the proposed terms of the Release.  <u>Id.</u>  Moreover, even after signing, the Release provided Relator with a seven-day window within which he could revoke his decision to agree to the Release.  <u>Id.</u>  Relator did not revoke the Release.  <u>Id.</u>  With time and legal advice available, Relator chose to sign the Release and "acknowledge that: [he] fully underst[oo]d the terms of this agreement and … [he] voluntarily and knowingly agree[d]

to the terms stated in this agreement; and [he] was not under any duress, coercion or undue influence when [he] executed [the Release]." Id.

6. Defendants were not served with the Complaint until April 6, 2009 almost four months after the Release was executed. See Exhibit "1."

7. At the time that Relator executed the Release, the government was informed of Relator's allegations of fraud against Defendants. Relator filed the initial qui tam Complaint in September 2008. Qui tam relators are statutorily required to provide the government a "copy of the complaint and written disclosure of substantially all material evidence and information" in their possession upon filing the action. 31 U.S.C. § 3730(b)(2); see also id. § 3730(e)(4)(B) (providing that a relator is eligible to bring qui tam actions arising out of publicly disclosed fraud allegations only if he "has voluntarily provided" to the government "the information" on which his claims are based "before filing an action"). Relator was statutorily required to provide all the information that he had prior to or at the time that he filed his Complaint.[1]  Therefore, the government already had the opportunity to investigate Relator's allegations when the Release was executed in January 2009. The Government elected not to intervene in this case by filing a Notice on March 16, 2009 (Doc. No. 12).

---

[1]  If the Relator failed to provide the information to the Government in accordance with 31 U.S.C. § 3730(b)(2), then the Relator should be dismissed, since he will not have "voluntarily provided the information to the Government before filing " his qui tam lawsuit. See 31 U.S.C. § 3730(e)(4)(B).

## III.
## ARGUMENTS AND AUTHORITIES

### A.    Summary Judgment Standard

"The purpose of a summary judgment motion . . . is to determine whether there is evidence to support a party's factual claim."  Jarvis, 500 F.3d at 1120 (quoting L&M Enters., Inc. v. BEI Sensors & Sys. Co., 231 F.3d 1284, 1287 (10th Cir. 2000)). "[T]he court is to view the record 'in the light most favorable to the nonmoving party.'" L&M, 231 F.3d at 1287 (quoting Thournir v. Meyer, 909 F.2d 408, 409 (10th Cir. 1990)).

To withstand summary judgment, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).  However, as detailed below, there are no material facts at issue.

### B.    The Court Should Enter Summary Judgment Against Relator, Because the Release Unambiguously Settles This Matter

By the clear, unambiguous terms of the Release, Relator has settled and released any and all claims that he may have against Defendants – including the allegations of the Complaint at issue in this case.  The Tenth Circuit has explained that a release of a claim is generally a question of state law:  "[A] release is a contract and its enforceability is ordinarily a question of state law." Ritchie v. Lockheed, 558 F.3d 1161, 1168 (10th Cir. 2009) (citing United States v. McCall, 235 F.3d 1211, 1215 (10th Cir. 2000)).  See also United States ex rel. Gebert v. Transp. Admin. Servs., 260 F.3d 909, 915 (8th Cir. 2001).

Oklahoma generally follows the standard common law rule that a release is a contract and will be interpreted by its explicit terms:   "[R]elease provisions are contractual, and the language of a contract (release) is to govern its interpretation, if the language is clear and explicit and does not involve an absurdity."  Kay Pharmacal Co. v. Dalious Const. Co., 276 P.2d 756, 758 (Okla. 1954) (cited approvingly in Cleveland v. Dyn-A-Mite Pest Control, Inc., 57 P.3d 119, 128-29 (Okla. Ct. App. 2002)); see also Corbett v. Combined Communications Corp. of Oklahoma, Inc. 654 P.2d 616 (Okla. 1982); Restatement (Second) of Contracts § 284 (1981); Sarah Howard Jenkins, 13 Corbin on Contracts § 67.9 at 77 (2003) ("One who has a contractual right against another, or a right to compensation, or to restitution because of another's breach of a contractual duty has the power to discharge these rights and the other's duty by executing and delivering a release.").  Indeed, Oklahoma makes clear that "one seeking a settlement and release has the right to buy peace from all future contention on the existing claims of every character."  Kay Pharmacal, 276 P.2d at 758.

Relator's Release is a contract with clear, explicit terms that resolve this matter.  Relator extinguished his FCA claims when he agreed "to forever waive and release any and all claims of any kind, which I have, had or may have against the Company, its current, former and future owners, parents, subsidiaries, and affiliates," etc. See Statement of Undisputed Facts ("UF") Nos. 2-5, supra.  Relator further agreed that the Release "is intended as a full settlement and compromise of each, every and all claims of every kind and nature, whether known or unknown, actual or contingent, asserted or unasserted, arising under common law, statutory law or otherwise."  Id.

9

Significantly, as in all <u>qui tam</u> actions, Relator brought the action "for the **person** and for the United States Government [and] The action shall be brought in the name of the government." 31 U.S.C. § 3730(b) (emphasis added). Relator is a partial assignee of the government's False Claims Act damages claim, <u>see</u> <u>Vt. Agency of Natural Res. v. United States ex rel. Stevens</u>, 529 U.S. 765, 773 (2000), and has standing to pursue, settle, or release his or her own personal, assigned-from-the-government interest in the lawsuit. <u>See, e.g.</u>, <u>Ritchie</u>, 558 F.3d at 1167. However, the government's unassigned interest in the <u>qui tam</u> action cannot be released or settled by the relator without the government's consent. <u>See</u> 15A Am Jur 2d Compromise and Settlement § 18 ("In order for a compromise agreement to be fully binding, the parties must have the capacity **and authority** to contract with reference to the subject matter of the compromise." (emphasis added)). Relator had the capacity and authority to release his personal claims, however, Defendants recognize that Relator's Release cannot be effective against the government without the government's acquiescence.

## C.   Sections 3730(b) and 3731(c) of the FCA Protect the Government's Interest When a Relator is Dismissed From an Action Because of a Valid Release

The FCA by its own terms does not prohibit the dismissal of a party, or the claims of a party, that signs a release. There is no provision that limits the Court's ability to dismiss a party – as opposed to an action – and no reason to depart from the general understanding that releases effectively terminate a party's ability to pursue a claim.

The FCA includes provisions that explicitly protect the government when a relator is dismissed. For example, the express terms of the statute provide the

government the ability to protect its rights and prevent the entire **action** from being dismissed even if the relator is dismissed as a party.  See 31 U.S.C. § 3730(b)(1) ("**The action** may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.") (emphasis added).  Thus, if Relator is dismissed as the result of the Release, the **action** still may not be dismissed without the government's consent and the government is free to pursue the matter on its own: "Since the government owns the FCA action, it is still free to bring its own suit after a would-be relator settles his or her own claim."  Ritchie, 558 F.3d at 1170 n.8.  See also United States ex rel. Stevens v. Vt. Agency of Natural Res., 162 F.3d 195, 200 (2d Cir. 1998) (explaining that failure to comply with qui tam procedural rules "warrants dismissal of the qui tam complaint with prejudice, which bars the qui tam plaintiff from refiling such a suit, but leaves the government free to bring suit on its own"), reversed on other grounds by Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765 (2000); United States ex rel. Le Blanc v. ITT Indus., Inc., 492 F. Supp. 2d 303, 308 (S.D.N.Y. 2007) (dismissing plaintiff's complaint with prejudice as to the relator and without prejudice as to the government).  Therefore, where a relator is dismissed, the government is free to pursue its own action based on the disclosed information.  As the government explained in its amicus curiae brief submitted in United States ex rel. Radcliffe v. Purdue Pharma L.P., 600 F.3d 319, 327 (4th Cir. 2010): "[The] defendant faces the real threat of an independent government action (or a qui tam action by another relator) …because a relator's settlement agreement does not preclude the government from bringing a separate enforcement action based on the relator's allegations."  Amicus

Br. for United States at 2-3, <u>id.</u>, Nos. 09-1202, 09-1244 (4th Cir. July 1, 2009) ("<u>Radcliffe</u> Amicus Br."), attached as Exhibit "3."

In a situation such as this where the government has previously declined to intervene, the FCA provides an opportunity for the government to intervene later: "[T]he court … may nevertheless permit the Government to intervene at a later date upon a showing of good cause."  31 U.S.C. § 3730(c)(3).  A situation where there is no longer a relator available to prosecute the FCA action – especially where the government was not aware of the relator's execution of a release at the time it made its intervention decision – is certainly one where the government can easily demonstrate "good cause" for a late intervention.  <u>See, e.g.,</u> <u>United States ex rel. Killingsworth v. Northrop Corp.</u>, 25 F.3d 715 (9th Cir. 1994), (holding that the government could intervene in <u>qui tam</u> case even after the district court had dismissed the case with prejudice as the result of a settlement between the relator and the defendant).[2]

The "relation back" provision of the 2009 Fraud Enforcement and Recovery Act ("FERA") amendments to the False Claims Act provides the government with additional protection by eliminating any statute of limitations defense when there is a substantial delay between the original <u>qui tam</u> complaint and the government's intervention.  FERA added a new provision to Section 3731 that expressly provides that the government's complaint-in-intervention or amended complaint relates back to the

---

[2]   A further protection provided to the Government is its ability to pursue alternate remedies.  31 U.S.C. § 3730(c)(5) states "the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty."

date of the relator's complaint as long as the government's complaint arises "out of the conduct, transactions, or occurrences" alleged in the relator's complaint.  31 U.S.C. § 3731(c).

There simply is no language or provision in the FCA that limits the dismissal of a relator as a consequence of signing a release.  To the contrary, the FCA has been structured to provide the government with multiple protections where a relator is released – including that the entire action cannot be dismissed without the Government's consent, 31 U.S.C. § 3730(b)(1), the Government would be permitted the opportunity to intervene in the action even after initially declining intervention, 31 U.S.C. § 3730(c)(3), and the Government's complaint would "relate back" to the original qui tam complaint to avoid a detrimental application of the statute of limitations.  31 U.S.C. § 3731(c).  Particularly after the passage of the FERA amendments, the FCA is structured to prevent harm to the government where a relator is dismissed for signing a release after filing its qui tam action.

**D.    There is No Significant Federal Policy or Interest That Would Require <u>Preempting the Operation of Oklahoma's State Law Regarding Releases</u>**

**1.    Federal Common Law May Only Trump State Law Where There <u>is an Unavoidable Conflict between Federal Policy and the State Law</u>**

As discussed above, applying Oklahoma's state law regarding releases establishes that the Release extinguishes Relator's claims.  "State law, if not preempted, presumptively supplies the missing rule."  <u>United States ex rel. Green v. Northrop Corp.</u>, 59 F.3d 953, 959 (9th Cir. 1995).  The usual application of state law can be preempted "only where … a 'significant conflict' exists between an identifiable 'federal policy or

interest and the [operation] of state law.'" Boyle v. United Technologies Corp., 487 U.S. 500, 507 (1988) (quoting Wallis v. Pan American Petroleum Corp., 384 U.S. 63, 68 (1966)). See also Ritchie, 558 F.3d at 1168 (quoting Boyle, 487 U.S. at 507). There is no such conflict here.

Specifically with regard to enforcement of releases, the Tenth Circuit has applied the standard set forth by the Supreme Court, which balances the interests in enforcing release against the harm to public policy caused by enforcement:  "[A] promise is unenforceable if the interest in its enforcement is outweighed in the circumstances by a public policy harmed by enforcement of the agreement."  Town of Newton v. Rumery, 480 U.S. 386, 392 (1987); see, e.g., United States ex rel. Radcliffe v. Purdue Pharma L.P., 600 F.3d 319, 327 (4th Cir. 2010) (noting that the relator, defendant and government "agree that the enforceability of the Release should be evaluated using the test applied by the Supreme Court in Town of Newton v. Rumery"); Ritchie, 558 F.3d at 1169; Green, 59 F.3d at 960-61.

Significantly, the Court in Rumery declined to find that federal policy interests required that a release be deemed unenforceable.  The Court looked to a number of different factors to determine that a release was enforceable including that:  (a) the plaintiff had voluntarily entered the agreement; (b) the plaintiff was represented by an attorney; (c) the plaintiff had the opportunity to consider the release for three days before signing it; and (d) the plaintiff received an obvious benefit from the agreement.  See Rumery, 480 U.S. at 394.  The Court concluded "that this agreement was voluntary, that

14

there is no evidence of prosecutorial misconduct, and that enforcement of this agreement would not adversely affect the relevant public interests." Id. at 399.

Those same factors relied upon by Rumery are present here: (a) Relator voluntarily entered the agreement; (b) Relator was represented by counsel when he executed the Release and was even advised to consult counsel; (c) Relator had an opportunity to consider the Release before signing and even an opportunity to revoke his agreement for seven days after executing; and (d) Relator received an obvious benefit – severance payments – instead of the speculative benefits of prevailing in his qui tam action. As explained in detail below, there is no adversely affected public interest in giving Relator the benefit of his bargain and enforcing his voluntary Release.

## 2. The Federal Interests Supported by the False Claims Act Would Not Be Furthered by Preempting State Law in This Case

Significantly here, there are no federal policy interests – including the Government's interest in combating fraud and the Government's interest in receiving an appropriate portion of any settlement – that would be harmed by the enforcement of the Release.

### a. Combating Fraud

As the Ninth Circuit explained in Green: "It is commonly recognized that the central purpose of the qui tam provisions of the FCA is to 'set up incentives to supplement government enforcement' of the Act, by 'encouraging insiders privy to a fraud on the government to blow the whistle on the crime.'" Green, 59 F.3d at 963 (quoting United States ex rel. Springfield Terminal Ry. Co. v. Quinn, 14 F.3d 645, 649

15

(D.C. Cir. 1994).  See also Wang v. FMC Corp., 975 F.2d 1412, 1419 (9th Cir. 1992); S. Rep. 99-345, at 2 (1986), reprinted in 1986 U.S.C.C.A.N. 5266, 5267 (stating that the False Claims Act incentivizes private individuals "knowing of Government fraud to bring that information forward" and to prosecute False Claims Act violations).   Private individuals are enlisted in this effort because they have information about fraud that may be unavailable to the government.  Ritchie, 558 F.3d at 1168 (citing Green, 59 F.3d at 963); see also S. Rep. 99-345, at 2, reprinted in 1986 U.S.C.C.A.N. at 5267 ("In the face of sophisticated and widespread fraud the Committee believes only a coordinated effort of both the Government and the citizenry will decrease this wave of defrauding public funds.").

        For example, in support of this federal public interest in combating fraud, some courts have found pre-filing releases unenforceable, reasoning that they impair the public interests in exposing government fraud and ensuring that the government receives a fair share of any settlement.[3]  As the Ninth Circuit explained in Green, "enforcing a prefiling release of a qui tam claim would dilute significantly the incentives that Congress attempted to augment in amending the Act.  If the release will be enforced, a party will have no right or reason to file a qui tam claim." Id. at 965.  And "[b]ecause the relator is likely to retain 100 percent as opposed to a maximum 30 percent of the recovery, a rational relator would be willing to accept a substantially smaller amount to settle the claim immediately than to preserve the right to eventually file a qui tam action

---

[3]   In contrast, this case involves a post-filing release which applies only to Relator and not to the government.

in which the government would retain the lion's share of the proceeds."  Id. at 966; see also Ritchie, 558 F.3d at 1169 ("The contractor and the would-be relator might settle a qui tam case for less than the amount recoverable on behalf of the government but more than the prospective relator's share of the recovery had a qui tam action been filed."); Gebert, 260 F.3d at 916 ("if another relator did not come forward after the first relator settled, the actual qui tam claim would never be filed, and the United States, unless it became aware of the claim and filed its own action, would not be able to recover any money damages from transgressors").

However, even pre-filing releases are found to be enforceable where the government already knows of the relator's allegation of fraud.  In such situations, there is no longer a concern that the information will not be brought forward to the government, and defendants are less likely to "buy" the silence of relators because the defendant faces the threat of an FCA action by the government or another relator.  For example, the Tenth Circuit in Ritchie enforced a pre-filing release because the relevant information had already been disclosed to the government.  558 F.3d at 1170 (holding that the defendant's disclosures to the federal government of the relator's allegations of fraud "were sufficient to satisfy the public interest in uncovering fraud").  Similarly, in United States ex rel. Hall v. Teledyne Wah Chang Albany, 104 F.3d 230, 231 (9th Cir. 1997), the Ninth Circuit affirmed a district court's decision to dismiss a qui tam action where the relator "had already sued [the defendant] in state court and had settled, executing a release that also encompassed any future qui tam claim."  The court concluded "the public interest in having information brought forward that the government could not otherwise obtain

[was] not implicated" where the government was given a chance to investigate.  Id. at 233.

The Fourth Circuit recently reiterated the enforceability of pre-filing releases when the government is aware of the fraud allegations:

> When the government is unaware of potential FCA claims, the public interest favoring the use of qui tam suits to supplement federal enforcement weighs against enforcing prefiling releases.  But when the government is aware of the claims, prior to suit having been filed, public policies supporting the private settlement of suits **heavily** favor enforcement of a prefiling release.

Radcliffe, 600 F.3d at 332 (emphasis added).

Of course, the situation before this Court is a **post-filing** release, not a **pre-filing** release.  The policy concerns regarding notifying the government of the fraud allegations are simply not a concern here because Relator already provided the government with information about the alleged fraud at issue.  Where the government knows of the relator's allegation of fraud – such as in this case where the release was executed after the filing of the qui tam complaint – the public interest in combating fraud is not implicated by the enforcement of a release and cannot act to supersede the usual state law of enforcing releases based on a usual contractual interpretation.

**b.    Ensuring the Government Receives a Fair
Share of the Settlement of a Qui Tam Action**

In addition to the goal of combating fraud generally, the government is entitled to the majority of the damages recovered in a qui tam lawsuit.  See 31 U.S.C. § 3730(d) (awarding to the government between 70% and 85% of the recovery in a qui tam action).

18

Consequently, the government has a significant federal interest in ensuring that a release does not limit its recovery or provide it with an unfair share of the recovery.[4]

Regardless of whether the government intervenes, in recognizing the financial interest of the government in any settlement, courts have provided the government with the opportunity to object to a dismissal of the entire action based on a settlement and receive a court determination as to whether the settlement deprives the government of the proper amount of the payment.  See Ridenour v. Kaiser-Hill Co., LLC, 397 F.3d 925, 931 n.8 (10th Cir.  2005) ("Even where the Government has declined to intervene, relators are required to obtain government approval prior to entering a settlement or voluntarily dismissing the action."); see also Killingsworth, 25 F.3d at 725 ("§ 3730(c)(2)(B) of the Act authorizes the district court to review a settlement, on objection of the relator, to determine whether it is fair and reasonable.  We now interpret the Act to provide a similar opportunity to the government; that is, when the government objects with good cause to a proposed settlement, it has a right to a hearing…."); United States v. Health Possibilities, P.S.C., 207 F.3d 335, 337-38 (6th Cir. 2000) (government permitted to object to settlement because monetary recovery was being diverted to attorneys' fees and

_____

[4]  Arguably, the Federal government's interest in its share of a settlement of the entire action is protected adequately through the statutory requirement that "The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."  31 U.S.C. § 3730(b)(1).  However, a few courts have held that this consent requirement does not apply once the government declines intervention.  See, e.g., Killingsworth, 25 F.3d at 722-23 (holding that "the consent provision contained in § 3730(b)(1) applies only during the initial sixty-day (or extended) period"); Green, 59 F.3d at 959 ("[I]n the absence of a later decision by the government to intervene, this provision applies only during the initial sixty-day period, or however long that period is extended, during which the government may review the case and elect to proceed with the action").

a related defamation action); <u>Searcy v. Philips Elecs. N. Am. Corp.</u>, 117 F.3d 154, 158 (5th Cir. 1997) (holding that government has "an absolute veto power over voluntary settlements in qui tam False Claims Act suits").

However, enforcing Relator's voluntary Release does not threaten the government's financial interest in pursuing <u>qui tam</u> cases.  <u>See</u> Section III.C, <u>supra</u>, (discussing the government's ability to bring its own suit, even if a relator is dismissed or excluded from the action).  In fact, the government has recognized that the dismissal of a party – with no prejudice to the government – does not implicate the government's financial interest:  "even when an FCA relator settles with a potential defendant, the government or another relator is still free to bring an FCA suit and **recover funds for the government**." <u>Radcliffe</u> Amicus Br. at 18 (emphasis added), attached as Exhibit "3."

In fact, the real protection of the government's financial interest here is accomplished by the disclosure of the allegations of fraud to the government through the filing of the complaint.  That notification of the alleged fraud provides the government with the **opportunity** to take action on its own.  "[T]he purpose of requiring disclosure of allegations of fraud to the government … is not to ensure that the government exhaustively investigates and prosecutes every allegation of fraud, but rather that it has an adequate *opportunity* to do so." <u>Radcliffe</u> Amicus Br. at 16, Ex. "3", (quoting <u>United States ex rel. Radcliffe v. Purdue Pharma L.P.</u>, 582 F. Supp. 2d 766, 783 (W.D. Va. 2008)) (emphasis in original).  <u>See also</u> <u>Radcliffe</u>, 600 F.3d at 331-33.  Here the government has received that opportunity, because, through the filing of the <u>qui tam</u>

Complaint, the government knows of the fraud allegations.  The government's financial interest is protected by its opportunity to intervene and prosecute the case.

### 3.    Public Policy Favors Enforcement of the Release in this Case

There is a "general federal interest in encouraging settlement," <u>Ritchie</u>, 558 F.3d at 1170 (10th Cir. 2009) and that interest is supported by the enforcement of the Release in this matter.  However, in addition to this usual interest, there are additional public policy reasons to favor enforcement of the Release in this case.

There is an interest in preserving the integrity of the judicial process in FCA cases where the statutory filing procedures create an imbalance of information.  This case is a clear example.  Relator entered into the Release with the full knowledge that a <u>qui tam</u> action was pending, while Defendants were unaware of the action.

It is not fair for a release to be based on undisclosed terms, not reflected in the text of the document, whereby a relator can take advantage of his superior knowledge to negotiate a settlement that a fully informed defendant may not have offered or for which may have proposed substantially different terms.  The FCA should not be read so as to create a situation where relators can extract settlements from defendants who are unaware that their settlements are ineffectual.

### IV.
### CONCLUSION

For the reasons stated, Defendants respectfully request that the Court enter summary judgment in their favor as to each Count in Plaintiff's Complaint as it relates to

the Relator, Ray Dillahunty.

/s/ John N. Hermes
John N. Hermes, OBA #4133
Timothy J. Bomhoff, OBA #13172
M. Richard Mullins, OBA #13329
Ronald T. Shinn Jr., OBA #19569
McAFEE & TAFT A Professional Corporation
Tenth Floor, Two Leadership Square
211 North Robinson
Oklahoma City, Oklahoma 73102
Telephone:   (405) 552-2258
Facsimile:    (405) 228-7458
Email: john.hermes@mcafeetaft.com
Email: tim.bomhoff@mcafeetaft.com
Email: richard.mullins@mcafeetaft.com
Email: ron.shinn@mcafeetaft.com

-and-

Roger S. Goldman, DC #333294
Kyle R. Jefcoat, DC #492380
LATHAM & WATKINS LLP
555 Eleventh Street NW
Suite 1000
Washington, D.C. 20004-1304
Telephone:   (202) 637-2200
Facsimile:    (202) 637-2201
Email: roger.goldman@lw.com
Email: kyle.jefcoat@lw.com

*ATTORNEYS FOR DEFENDANTS*
*CHROMALLOY GAS TURBINE*
*CORPORATION, CHROMALLOY GAS*
*TURBINE LLC, and SEQUA CORPORATION*

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of September, 2010, I electronically transmitted the attached document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to any ECF registrants for this case:

David W Van Meter, OBA #13893
M. Kevin Walker, OBA #19590
Van Meter Law Firm
600 N Walker Avenue, Suite 101
Oklahoma City, Oklahoma  73102
Tel:    (405) 228-4949
Fax:    (405) 228-4945
david@vanmeterlawfirm.com
kevin@vanmeterlawfirm.com
**-and-**
Thomas E. Prince, OBA #7317
Prince Law Office, P.C.
204 East Second Street
Post Office Box 2911
Edmond, Oklahoma  73083-2911
Tel:    (405) 359-3693
Fax:    (405) 359-5834
tomprince@tomprincelaw.com
*ATTORNEYS FOR PLAINTIFF/RELATOR*

I also hereby certify that on this 30th day of September, 2010, I served the attached document by email, to the following, who is not shown as a registered participant in this action.

Robert C. Bradford
Assistant U.S. Attorney
United States Attorney's Office
Western District of Oklahoma
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
Tel:    (405) 553-8700
Fax:    (405) 553-8885
Email: Robert.Bradford@usdoj.gov

*/s/ John N. Hermes*
John N. Hermes