IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| *ex rel.* RAY DILLAHUNTY, ) | |
|     ) | |
|         Plaintiff/Relator, ) | |
|     ) | |
| v.     ) | No. CIV-08-944-L |
|     ) | |
| CHROMALLOY OKLAHOMA, a ) | |
| division of CHROMALLOY GAS ) | |
| TURBINE CORPORATION; et al., ) | |
|     ) | |
|         Defendants. ) | |

# **O R D E R**

Relator, Ray Dillahunty, filed this *qui tam* action on September 9, 2008, seeking relief under the False Claims Act, 31 U.S.C. § 3730(b)(1). On March 16, 2009, the government filed its Notice of Election to Decline Intervention (Doc. No. 11). Thereafter, Dillahunty served the defendants, who moved to dismiss for failure to state a claim. On November 16, 2009, the court issued an order granting defendants' motions to dismiss, but also granting Dillahunty leave to file an amended complaint, which he did on December 18, 2009. Defendants again filed a motion to dismiss, which the court denied except with respect to defendant The Carlyle Group. Dillahunty alleges defendants defrauded the United States by approving, certifying, and presenting "certain airplane engine parts as serviced according to U.S. Government supplied Work Packages with Technical Procedures (hereinafter referred to as 'Work Packages') without actually and/or fully complying with the Work

Packages." Amended Qui Tam Complaint at ¶ 1 (Doc. No. 55).[1] Dillahunty contends defendants failed to repair airplane parts in accordance with government specifications and therefore "placed non-serviceable and incompletely serviced parts into service, and the integrity of the parts is in question which affects the durability of the parts, shortens the life of the parts and results in potential part failures and thus a flight safety risk." Id.

The original complaint and the Amended Qui Tam Complaints concerned a number of different airplane parts and processes. On October 14, 2013, the parties filed a stipulation dismissing claims with respect to five different parts. Joint Stipulation Dismissing Certain Claims Without Prejudice (Doc. No. 164). Therefore, only three parts and four repair processes remain at issue. With respect to part TF33 Compressor Stators –1, Stages 5-8, Dillahunty alleges defendants failed to conduct magnetic particle inspection after resizing the stators. Dillahunty asserts two claims with respect to the F100 Turbine Vanes, Stage 3. He first contends that when removing loose or worn rivets defendants also removed portions of the vane parent material and vane platform area, which caused damage such as thinning or cracking. Second, he alleges defendants failed to conduct fluorescent penetrant inspection after removing loose or worn rivets before inserting new rivets.

---

[1] A Second Amended Qui Tam Complaint was filed on August 19, 2013 (Doc. No. 146). The amendments contained in the Second Amended Qui Tam Complaint were minor and were made "to allow the pleadings to conform to the evidence". Plaintiff's Motion for Leave of Court to Amend Complaint at ¶ 5 (Doc. No. 139).

Dillahunty's final allegation concerns the part known as F100 Turbine Vanes, Stage 4. With respect to this part, Dillahunty contends defendants performed a full face weld, which he alleges was in violation of the government specifications.

This matter is before the court on the remaining defendants' motion for summary judgment. The Chromalloy defendants[2] seek judgment in their favor on the merits of the remaining claims at issue. They argue Dillahunty cannot meet his burden of proof under the False Claims Act. In addition to the arguments made by the Chromalloy defendants, Sequa Corporation argues it cannot be liable under the False Claims Act because it did not enter into any of the contracts at issue and did not repair, ship, or receive payment for any of the parts at issue.

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. Board of Education v. Pico, 457 U.S. 853, 863 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "[T]here is no issue for trial unless there is

---

[2]Chromalloy Oklahoma, Chromalloy Gas Turbine Corporation, and Chromalloy Gas Turbine LLC will be referred to collectively as the "Chromalloy defendants."

sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-50 (citations omitted). In addition, the plain language of Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

In the Second Amended Complaint, Dillahunty asserts defendants violated sections 3729(a)(1)(A) and (2) of the False Claims Act.[3] These sections provide that "any person who – (A) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (B) knowing makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim . . . is liable to the United States Government for a civil penalty . . . ." 31 U.S.C. § 3729(a)(1)(A)-(B).

---

[3]On May 20, 2009, Congress enacted the Fraud Enforcement Recovery Act of 2009. Pub. L. No. 111-21, 123 Stat. 1617 (2009). The Act modified and renumbered sections of the False Claims Act. Congress specified that renumbered and amended § 3129(a)(1)(B) "shall take effect as if enacted on June 7, 2008, and apply to all claims under the False Claims Act (31 U.S.C. 3729 et seq.) that are pending on or after that date". Id. at 1625. The parties did not brief whether the revised statute applies to this action, and the court need not determine that issue to resolve the pending motion. The court, however, notes that the Court of Appeals for the Sixth Circuit has held the revised statute applies to all cases that were pending as of June 7, 2008. See United States ex rel Sanders v. Allison Engine Co., Inc., 703 F.3d 930, 942 (6th Cir. 2012), cert. denied, 133 S. Ct. 2855 (2013). As this action was filed on September 9, 2008, the court will cite the revised statute.

4

> Under § 3729(a), liability can attach when a government payee submits either a legally or factually false request for payment. Claims arising from factually false requests generally require a showing that the payee has submitted "'an incorrect description of goods or services provided or a request for reimbursement for goods or services never provided.'" Claims arising from legally false requests, on the other hand, generally require knowingly false certification of compliance with a regulation or contractual provision as a condition of payment.

United States *ex rel.* Lemmon v. Envirocare of Utah, Inc., 614 F.3d 1163, 1168 (10th Cir. 2010) (citations omitted). False certification claims can be either express or implied. An express false certification claim arises "when a payee 'falsely certifies compliance with a particular statute, regulation or contractual term, where compliance is a prerequisite to payment.'" Id. (citation omitted). The certification need not be a formal written document; rather, all that is required is that the government payee make "any false statement that relates to a claim." Id. Under the implied false certification theory, the court does not examine the statements made by the payee. "Rather, 'the analysis focuses on the underlying contracts, statutes, or regulations themselves to ascertain whether they make compliance a prerequisite to the government's payment.'" Id. (citation omitted). At issue in implied false certification claims is whether the contractor when it submitted a claim for payment knowingly and falsely implied that it was entitled to such payment. Regardless of whether the certification is express or implied, it must be material to the government's decision to pay the claim. "[A] false certification – regardless of

whether it is implied or express – is actionable under the FCA only if it leads the government to make a payment which, absent the falsity, it may not have made." Id. at 1169.

Based on the standards and case law enunciated above, the court concludes defendants' motion for summary judgment should be denied with respect to the claims associated with the TF33 Compressor Stators and the Stage 3 F100 Turbine Vanes, but granted with respect to the Stage 4 F100 Turbine Vanes claims. The court finds Dillahunty has presented sufficient evidence to present a justiciable issue on each of the elements of the False Claims Act with respect to the TF33 Compressor Stators and the Stage 3 F100 Turbine Vanes.

Dillahunty has not, however, met his burden[4] with respect to the Stage 4 Vanes. With respect to this part, Dillahunty contends defendants made an unapproved repair by performing a full-face weld rather than welding only a grooved section. Dillahunty, however, has no evidence that performing a full-face weld violated the contract or that defendants performed such welds and then presented parts to the government for payment. In fact, the only evidence of record supports

---

[4]Defendants contend – without citation to any Tenth Circuit decision – that the burden of proof in False Claims Act cases is clear and convincing. In support of this argument, defendants claim the 1986 amendment of the False Claims Act – in which Congress specified preponderance as the burden of proof – applies only to cases brought by the government. The court disagrees. There is nothing in the legislative history of the 1986 amendments to indicate that Congress intended one burden of proof for cases brought by the government and a higher burden of proof for cases brought by individuals on behalf of the government. In fact, given that the individual relator stands in the shoes of the United States and sues on its behalf, it only makes sense that the burden of proof should be the same, that is, by preponderance of the evidence.

the opposite. In support of his claim that full-face welding violates the contract, Dillahunty cites internal documents prepared by Chromalloy Oklahoma, known as CDOs. *See* Relator's Response to Defendants' Summary Judgment Motion at 7 (Doc. No. 233) [hereafter cited as "Relator's Response"]. CDOs are step-by-step process instructions that are used by Chromalloy Oklahoma employees on the shop floor to guide them through various processes.[5] While the CDOs are "written to interpret the approved data, the technical orders or the work packages that are provided by the government",[6] they are not the government contracts. Moreover, defendants presented evidence that the contracts did not prohibit full-face welds,[7] and Dillahunty did not present evidence to dispute this. In addition, it appears that – in the main – defendants did not present full-face welded Stage 4 Vanes to the government for payment. Rather, Bruce Johnson, who was employed with Chromalloy Gas Turbine LLC, testified "the company set aside 3,000, 4,000 parts that required full face weld because they weren't prepared to do it because it didn't work". Exhibit 39 to Defendants' Motion at 130. Likewise, Brian Martin, another Chromalloy employee, testified that if a vane

> had localized wear I would presume they would [weld] in
> that area. What I do know is when it had wear across the

---

[5] Exhibit 25 to Defendants' Memorandum in Support of their Motion for Summary Judgment at 19 (Doc. No. 195) [hereafter cited as "Defendants' Motion"].

[6] Exhibit 39 to Defendants' Motion at 13.

[7] Exhibit 24 to Defendants' Motion at 121; Exhibit 25 to Defendants' Motion at 125-27; Exhibit 39 to Defendants' Motion at 120-21, 128, 130, 134, 136.

>entire groove and they tried to do a full face weld using the manual weld process here the end result would be the part would end up going scrap because it would distort and that's why Chromalloy then came up with at our own expense the laser clad repair, which was a way to do the repair that the government wanted and resulted in an actual serviceable part being produced because it didn't distort the leading edge face. . . .  So if you tried to do the process with the full face weld you couldn't do it because at one point we had like 3,000 or 4,000 pieces on hold because they were all in the same condition and we knew the result, they'd all be scrapped. . . . [A]t one point we couldn't produce any F-100 fourth stage vanes because every part we tried to weld ended up going to scrap and for almost a year we didn't produce any F-100 fourth stage vanes because all the parts were on hold while we were trying to get the laser clad repair approved by the government and then once that got approved that was the method we used to salvage all these vanes and save the government money.

Exhibit 16 to Relator's Response at 179-80. Mr. Martin clarified that full-face welding was not prohibited by the contract, but defendants "couldn't yield a part using that process." Id. at 181.  Finally, Dillahunty has presented no evidence of any express or implied certification to the government regarding the Stage 4 Vanes.  In fact, the government inspectors assigned to defendants' plant all testified that they had no "memory about specific welding on the F100 4th Vanes." Exhibits 32, 33, and 34 to Relator's Response at ¶ 12.  Defendants are thus entitled to judgment in their favor on Dillahunty's claim regarding the Stage 4 F100 Turbine Vanes.

Likewise, Sequa Corporation is entitled to judgment in its favor as there is no evidence it participated in the contracts at issue here.  Merely being the parent of a

corporation that has allegedly violated the False Claims Act is not sufficient for liability to attach under the Act. Rather, the parent must have been directly involved in making the false claims or there must be a reason to disregard the corporate entities. See United States *ex rel.* Fent v. L-3 Commc'ns Aero Tech LLC, 2007 WL 3485395 at *3 (N.D. Okla. Nov. 8, 2007). Dillahunty offers no evidence that Sequa was involved in repairing the parts at issue here or that it directly submitted any claims to the government. The only evidence Dillahunty cites for disregarding the separate corporate entities is (1) Chromalloy is a registered trademark of Sequa; (2) certain senior executives have been employed by both Sequa and Chromalloy; (3) Sequa came to the Chromalloy plant on occasion; (4) Sequa provided an ethics manual for Chromalloy employees and maintained a hotline for Chromalloy employees; and (5) Dillahunty's retirement account was managed by Sequa. This is insufficient as a matter of law to demonstrate that Sequa should be held liable under the False Claims Act. Sequa is therefore entitled to summary judgment in its favor.

In sum, Defendants' Motion for Summary Judgment (Doc. No. 179) is GRANTED in part and DENIED in part.

It is so ordered this 8th day of January, 2014.

*/s/ Tim Leonard*
TIM LEONARD
United States District Judge